JOHNSON ELECTRIC COMPANY, INC. *v.* SALCE CONTRACTING ASSOCIATES, INC.
(AC 21509)

Schaller, Mihalakos and Peters, Js.

Argued May 28—officially released September 17, 2002

*Anthony R. Minchella*, with whom, on the brief, was *Maximino Medina, Jr.*, for the appellant (plaintiff).

*Paul A. Sobel*, for the appellee (defendant).

*Opinion*

PETERS, J. Our Unfair Trade Practices Act, General Statutes § 42-110a et seq. (CUTPA),[1] provides a remedy for a person who has sustained an ascertainable loss as a result of conduct that is immoral, unethical, oppressive or unscrupulous. The CUTPA claimant in this case

---

[1] Although the complaint also contained a count for breach of contract, the trial court, *Levin, J.*, granted the defendant's motion for summary judgment on that count. The plaintiff amended its complaint accordingly. It no longer pursues any claim for breach of contract.

is a subcontractor that was denied a subcontract even though the subcontractor had been named in the successful bid proposal of the general contractor. An attorney trial referee, relying on his extensive findings of fact, issued a report concluding that the subcontractor had proven a CUTPA violation. The trial court rejected the report of the attorney trial referee. The most important issue in this case is whether, as a matter of statutory interpretation, CUTPA requires a claimant to prove not only misconduct, but also a repeated course of misconduct. Because we agree with the claimant that a single instance of misconduct may be actionable, we reverse the judgment of the trial court.

The plaintiff subcontractor, Johnson Electric Company, Inc., filed a complaint against the defendant general contractor, Salce Contracting Associates, Inc., in which it alleged that the defendant had violated CUTPA by failing to award it a subcontract to do the electrical work on a Bridgeport school project. Despite the fact that the school project required a general contractor to "name its subs," the defendant denied that it owed any duty to the plaintiff. The trial court, without expressly challenging the findings of Mark J. Rosen, an attorney trial referee to whom the case had been referred, concluded that the plaintiff had not proven its CUTPA claim.

The plaintiff's appeal challenges the validity of the trial court's judgment with respect to both its fact-finding and its legal conclusions. Our basic standard of review of such claims is well established. "To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Wagner* v.

*Clark Equipment Co.*, 259 Conn. 114, 122, 788 A.2d 83 (2002); *Coady* v. *Martin*, 65 Conn. App. 758, 764, 784 A.2d 897 (2001), cert. denied, 259 Conn. 905, 789 A.2d 993 (2002). We agree with the plaintiff in both respects.

I

## FACTUAL FINDINGS

The trial court's findings of fact were based entirely on the record of the proceedings before the attorney trial referee. Under these circumstances, application of the "clearly erroneous" test must reflect the special rules that govern judicial review of a report of an attorney referee. "While the reports of [attorney trial referees] in such cases are essentially of an advisory nature, it has not been the practice to disturb their findings when they are properly based upon evidence, in the absence of errors of law, and the parties have no right to demand that the court shall redetermine the fact thus found. . . . A reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees. . . . This court has articulated that attorney trial referees and factfinders share the same function . . . whose determination of the facts is reviewable in accordance with well established procedures prior to the rendition of judgment by the court." (Citation omitted; internal quotation marks omitted.) *Killion* v. *Davis*, 257 Conn. 98, 102, 776 A.2d 456 (2001), quoting *Elgar* v. *Elgar*, 238 Conn. 839, 848–49, 679 A.2d 937 (1996); *Seal Audio, Inc.* v. *Bozak, Inc.*, 199 Conn. 496, 508, 508 A.2d 415 (1986). "[T]he trial court may not retry the case and pass on the credibility of the witnesses . . . ." *Post Road Iron Works, Inc.* v. *Lexington Development Group, Inc.*, 54 Conn. App. 534, 541, 736 A.2d 923 (1999).

In accordance with this road map, to determine the propriety of the fact-finding of the trial court, we first must examine the fact-finding of the attorney trial referee. These facts are recited in the report that the plaintiff asked the court to accept.

The attorney trial referee made the following findings. He found that (1) the defendant, in its bid solicitation to construct the school, named the plaintiff as its electrical subcontractor because the municipality required all bids to "name your sub"; (2) in its bid solicitation, the defendant submitted a price for electrical work that was higher than the price that the plaintiff had quoted to the defendant; (3) subsequent to the award of the construction contract to the defendant, the defendant asked the plaintiff to reduce its price to reflect a lower bid price that the plaintiff had offered to a competing general contractor;[2] and (4) the defendant, having failed to receive the requested price reduction, entered into an electrical subcontract with another subcontractor.

With respect to the plaintiff's CUTPA claim, the attorney trial referee further found that the plaintiff "routinely provide[d] different bids to different general contractors based on a consideration of multiple factors including prior experience with different general contractors." He found that it was industry practice that the named subcontractors actually receive the work. He also found that it was unethical, unfair and inconsistent with normal industry practice for a contractor to engage in "bid shopping"[3] among nonlisted subcontractors.

[2] The plaintiff's president testified that the price it quoted to the defendant was lower than the price quoted by any other electrical subcontractor that submitted a bid.

[3] In the memorandum of decision that accompanied the judgment sustaining the viability of the plaintiff's CUTPA claim, the court, *Levin, J.*, described bid shopping. "Bid shopping is the term used to describe a prime contractor's post-award effort to obtain lower-priced subcontractors than those upon which he based his price to the owner. . . . This practice is generally condemned as unethical by construction industry associations

Finally, he found that the defendant knew that the bid solicitation had a "name your sub" requirement.

Neither the trial court nor the defendant has challenged any of these findings of fact as being clearly erroneous. Instead, the court and the defendant have added facts that the attorney trial referee's report did not include. Only the court had the authority to add facts and its authority had to be exercised in accordance with Practice Book § 19-17 (b). Pursuant to that section, the court could add a fact only if it was "admitted or undisputed . . . ."

We agree with the plaintiff that the court exceeded its authority. The court added two findings of fact. One was that the defendant's request to the plaintiff to lower its bid price was neither unfair nor coercive. The other was that the defendant had not been treated fairly and equally by the plaintiff. Our review of the report of the attorney trial referee and the testimony on which the report relies persuades us that neither of these added facts can accurately be characterized as admitted or undisputed. We will not consider them further.

The defendant does not claim that it had *any* authority to add findings to the report of the attorney trial referee. An appeal is not a trial de novo. Nonetheless, the defendant relies on testimony that is not reflected in the findings of fact of the attorney trial referee. To state the obvious, the attorney trial referee was not obligated to make additional findings, just as he was not obligated to find credible the testimony of the defendant's witnesses. No one other than the attorney trial referee is authorized to assess the credibility of the witnesses who appear before him. *Post Road Iron Works, Inc.* v. *Lexington Development Group, Inc.,* supra, 54 Conn. App. 541.

---

. . . ." (Internal quotation marks omitted.) 1 S. Stein, Construction Law (2002) § 2.05 [1], p. 2-158.

We must, therefore, disregard the defendant's repeated assertions, throughout its appellate brief, that the plaintiff's conduct was inequitable. On the record, it was not inequitable for the plaintiff to consider economic circumstances when it calculated the bid price that it quoted to the defendant. The plaintiff was not found to have engaged in bid rigging. The defendant's statements to the contrary serve only to confuse.

We conclude, therefore, that the findings of fact contained in the report of the attorney trial referee are dispositive. Our review of the legal conclusions of the trial court must be based on these findings and no others.

## II

## CUTPA VIOLATION

As a matter of law, to establish a CUTPA violation, the plaintiff had to establish that it was injured by "unfair or deceptive acts or practices in the conduct of any trade or commerce." General Statutes § 42-110b (a). The attorney trial referee so concluded.

The defendant maintains that the trial court properly came to the opposite conclusion. According to the court and the defendant, even if the refusal to enter into a subcontract with the plaintiff did not comport with an established trade practice and even if the plaintiff's conduct was entirely proper, the plaintiff has not satisfied the conditions that limit CUTPA relief. We disagree.

The court concluded that CUTPA was inapplicable because the dispute between the parties involved only (1) a single isolated instance that (2) did not implicate any specific and substantial public purpose. Because the court's conclusions concerned issues of law, our review is plenary. In our view, these objections to the report of the attorney trial referee are not well founded.

## A

## Single Incident

The trial court held that, because the plaintiff did not prove that the defendant had engaged in a repeated course of misconduct, the plaintiff did not establish that the defendant violated CUTPA. The court characterized the present case as no more than a fact bound isolated incident. In the court's view, in order to prevail, the plaintiff would have had to show that this defendant regularly called the plaintiff "for the same bid price that [the plaintiff] gave to other competing general contractors."

Whether CUTPA applies to a single act of misconduct is a question of first impression. Our Supreme Court has not addressed it directly. The trial courts are divided.[4] In the absence of applicable common-law principles, the scope of General Statutes § 42-110g (a) is entirely a question of statutory interpretation.[5]

---

[4] The majority of Superior Court decisions have held that a single act or occurrence is sufficient to support a CUTPA claim. See *Pollock* v. *Panjabi*, 47 Conn. Sup. 179, 198–99, 781 A.2d 518 (2000); *Bank of New Haven* v. *Karas Motors, Inc.*, Superior Court, judicial district of New Haven, Docket No. 414574 (July 28, 1999); *Abrams* v. *Riding High Dude Ranch, Inc.*, Superior Court, judicial district of Fairfield, Docket No. 345046 (February 5, 1998); *Giacomo* v. *USF & G Ins. Co.*, Superior Court, judicial district of Stamford-Norwalk, Docket No. 164760 (September 10, 1998); *Glaser Realty Associates* v. *Joshua Morris Publishing, Inc.*, Superior Court, judicial district of Danbury, Docket No. 322785 (January 15, 1997); *Lovick* v. *Nigro*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 542473 (February 24, 1997).

For cases holding that multiple acts are required to support a CUTPA claim, see *Morgan* v. *Tolland County Health Care, Inc.*, Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. 469204 (February 9, 1996) (16 Conn. L. Rptr. 294); *Swienicki* v. *Griggs & Browne Co.*, Superior Court, judicial district of New London, Docket No. 513407 (February 28, 1995).

[5] General Statutes § 42-110g (a) provides in relevant part: "Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action . . . to recover actual damages. Proof of public interest or public injury shall not be required in any action brought under this section . . . ."

Well established principles of statutory interpretation require us to engage in "a reasoned search for the intention of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Connelly* v. *Commissioner of Correction*, 258 Conn. 394, 403, 780 A.2d 903 (2001); *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 26, 717 A.2d 77 (1998); *Kindl* v. *Dept. of Social Services*, 69 Conn. App. 563, 567, 795 A.2d 622 (2002).

Textually, § 42-110g (a) describes those who are eligible to bring a CUTPA action as "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of *a method, act or practice* prohibited by section 42-110b . . . ." (Emphasis added.) The use of "practice" as well as "act" is indicative of an intent to make the statute applicable to a single act of misconduct. This interpretation is consistent with § 42-110b (d), which expresses the intent of the legislature that, as a remedial statute, CUTPA is to be interpreted broadly.

The legislative history of § 42a-110g (a) is entirely consistent with the instruction stated in § 42-110b (d). On several occasions, the legislature has amended the statute so as to broaden its application. In 1975, the legislature deleted a notice requirement. In 1979, the legislature deleted a privity requirement. In 1984, the legislature added language to clarify that a claimant need not prove a public interest or a public injury. To the best of our knowledge, it had never amended CUTPA so as to limit its coverage.

It is true, as the defendant notes, that § 42-110g (a) refers to §42-110b, which speaks, in the plural, of deceptive "acts" or "practices." We are persuaded that our interpretation of § 42-110g (a) can be reconciled with § 42-110b. In describing the kinds of conduct that CUTPA forbids, the legislature naturally described such conduct in the plural. When it came to defining the terms of the conduct that was actionable, the legislature naturally was more precise. It not only used the word "act" in the singular but also provided relief for a "practice." We do not disregard any part of a statute. "Every word and phrase is presumed to have meaning, and we do not construe statutes so as to render certain words and phrases surplusage." *State* v. *Walton*, 41 Conn. App. 831, 842–43, 678 A.2d 986 (1996), citing *Rydingsword* v. *Liberty Mutual Ins. Co.*, 224 Conn. 8, 16, 615 A.2d 1032 (1992); see *Vibert* v. *Board of Education*, 260 Conn. 167, 176, 793 A.2d 1076 (2002).

Finally, our interpretation follows the accepted principle that, in case of doubt, the more specific statutory provision takes priority over one that is more general. *Velez* v. *Commissioner of Correction*, 250 Conn. 536, 550, 738 A.2d 604 (1999); *Commission on Human Rights & Opportunities* v. *Truelove & Maclean, Inc.*, 238 Conn. 337, 346, 680 A.2d 1261 (1996); *Coregis Ins. Co.* v. *Fleet National Bank*, 68 Conn. App. 716, 720, 793 A.2d 254 (2002). It is § 42a-110g that specifically describes a CUTPA cause of action.

Our interpretation of § 42a-110g is supported by case law in which, albeit without discussion of the issue, CUTPA has been held to apply to a single act of misconduct. Our Supreme Court so held in *Daddona* v. *Liberty Mobile Home Sales, Inc.*, 209 Conn. 243, 259, 550 A.2d 1061 (1988), in which that court found that the single act of dismantling a mobile home violated CUTPA. This court, again without statutory analysis, came to a similar conclusion in *Lester* v. *Resort Camplands Interna-*

*tional, Inc.*, 27 Conn. App. 59, 71, 605 A.2d 550 (1992) (single controversy about space in a campground). We know of no appellate case to the contrary and the defendant has cited none.

To supplement its argument about the significance of the language used in § 42-110b, the defendant reminds us that the legislature has instructed us to be guided by the law of unfair trade practices under § 5 (a) (1) of the Federal Trade Commission Act, 15 U.S.C. § 45 (a) (1). Federal law speaks of unfair trade practices in the plural. The defendant maintains that we should do the same. We disagree.

Although the guidance provided by federal law will often be enlightening, federal law is not a straightjacket. In *Caldor, Inc.* v. *Heslin,* 215 Conn. 590, 577 A.2d 1009 (1990), cert. denied, 498 U.S. 1088, 111 S. Ct. 966, 112 L. Ed. 2d 1053 (1991), our Supreme Court held that that the judgments of our courts are not limited by § 5 of the Federal Trade Commission Act. "As originally enacted, [CUTPA] provided that state unfair or deceptive acts or practices were to be those determined to be unfair or deceptive by the [Federal Trade Commission] or the federal courts. 1973 Pub. Acts 615, § 2 (a). However, the Act was amended in 1976 to provide only that courts in Connecticut [and the department of consumer protection] were to be 'guided by' federal interpretations of § 5 of the [Federal Trade Commission Act]. The purpose of the change apparently was to permit . . . practices which had not yet been specifically declared unlawful by federal authorities to be nevertheless unlawful under CUTPA. . . . *Bailey Employment System, Inc.* v. *Hahn,* 545 F. Sup. 62, 71 (D. Conn. 1982) [aff'd, 723 F.2d 895 (2d Cir. 1983)]." (Internal quotation marks omitted.) *Caldor, Inc.* v. *Heslin,* supra, 598. In other words, federal law sets a floor for Connecticut law, but not a ceiling.

We conclude, therefore, that the trial court improperly declined relief to the plaintiff on the ground that it had alleged and proven only a single act of misconduct. We reiterate that CUTPA is a remedial statute. If there were any plausible doubt about the conduct that the statute makes actionable, the remedial purpose of the statute persuades us that such doubts should be set aside to permit recovery by the plaintiff.

## B

### Public Interest

The court concluded that CUTPA provides relief only if a plaintiff can demonstrate that its claim implicates a "substantial public interest." The court came to this conclusion because of the holding of our Supreme Court in *Ivey, Barnum & O'Mara* v. *Indian Harbor Properties, Inc.*, 190 Conn. 528, 461 A.2d 1369 (1983). That case is no longer good law. As the defendant belatedly concedes, the need to show a substantial public interest has been eliminated by the enactment of the 1984 amendment of § 42-110g (a).

## C

### Ascertainable Loss

In addition to its conclusions about the kinds of transactions that fall within CUPTA, the court also concluded that the plaintiff could not succeed because it did not meet the requirements for relief that are stated in CUTPA. The court held that, as a matter of law, the plaintiff had failed to prove an ascertainable loss. Such proof is required by § 42-110g (a).

The attorney trial referee found that the plaintiff had submitted to the defendant a bid proposal in the amount of $596,950. The attorney trial referee further found that, in arriving at this bid figure, the plaintiff had followed its usual procedures. The plaintiff's president

testified that its standard profit margin was 8 percent of the price quoted to the general contractor. The attorney trial referee determined that, at a later time, it would hear "further argument concerning the basis for the plaintiff's assertion of 8 percent profit and $4000 to $5000 of cost of preparation of the bid." It bears remembering that, once a CUTPA violation is established, a claimant may recover not only actual damages, but also costs and attorney's fees. General Statutes § 42-110g (d).

Neither the trial court nor the defendant has questioned the propriety of holding a supplemental hearing in damages. This acquiescence implies that there is no question that the attorney trial referee was satisfied that the plaintiff had sufficiently demonstrated that it had suffered an ascertainable loss.

The court, however, concluded that the report of the attorney trial referee should not be accepted because the record was "void of any ascertainable loss of money . . . ." In the words of the court, "8 percent profit margin does not prove ascertainable damages in this case. Further, the various bids, which were substantially different, by [the plaintiff] for identical electrical work for this project fundamentally belies this suggestion. The suggested cost of preparing a bid merely is a usual cost of business and cannot be charged as damages in this case. [The plaintiff] would have incurred this cost whether he did the work or not. The plaintiff has failed to prove ascertainable damages."

The court improperly relied on factual assumptions that have no grounding in the findings contained in the report of the attorney trial referee. More important, under our case law, proof of an ascertainable loss does not require quantification of the loss that a CUTPA claimant has suffered. "[T]he words 'any ascertainable loss' . . . do not require a plaintiff to prove a specific

amount of actual damages in order to make out a prima facie case. . . . Under CUTPA, there is no need to allege or prove the amount of the ascertainable loss." (Citations omitted.) *Hinchliffe* v. *American Motors Corp.*, 184 Conn. 607, 612–14, 440 A.2d 810 (1981); see also *Beverly Hills Concepts, Inc.* v. *Schatz & Schatz, Ribicoff & Kotkin*, 247 Conn. 48, 79, 717 A.2d 724 (1998). On its face, the loss of a contract is an ascertainable loss.

Paradoxically, the defendant also relies on *Hinchliffe.* The defendant reminds us that *Hinchliffe* held that an ascertainable loss must be "of money or property, real or personal, *as a result of* the use or employment of a method, act or practice prohibited by section 42-110b . . . ." (Emphasis added; internal quotation marks omitted.) *Hinchliffe* v. *American Motors Corp.*, supra, 184 Conn. 612. The defendant focuses on the fact that the plaintiff did not prove a breach of contract. Without a contract, according to the defendant, the plaintiff's loss of profits was not caused by the defendant. Without a contract, the defendant did not cause the plaintiff to lose preparatory costs because the plaintiff was free to offer its electrical services to other general contractors.

The flaw in this argument is that it assumes an identity between contracts law and CUTPA law. More specifically, it assumes that conduct consisting of the unjustified failure to enter into a contract can never be conduct that causes losses that are cognizable under CUTPA. *Hinchliffe* does not say that, and the defendant has not cited any other case that supports its argument.

### III

### ALTERNATE GROUNDS FOR AFFIRMANCE OF THE JUDGMENT

The defendant maintains that we should affirm the judgment of the trial court also on the basis of issues

that the court did not address. According to the defendant, the record establishes alternate grounds for affirmance because, as a matter of law, the "undisputed facts" are insufficient to establish a CUTPA claim.[6] Our review is plenary. *Elm Street Builders, Inc.* v. *Enterprise Park Condominium Assn., Inc.*, 63 Conn. App. 657, 669, 778 A.2d 237 (2001).

The defendant advances four arguments: (1) the defendant's conduct did not meet the CUTPA unfairness standard; (2) the defendant's conduct was merely passive in refraining from doing an act it had no legal duty to perform; (3) the court lacked sufficient evidence to award damages to the plaintiff; and (4) the plaintiff's bids to general contractors were rigged to the defendant's disadvantage. We are not persuaded.

The defendant's first claim is that the defendant's conduct was not actionable under CUTPA because it did not fit within the criteria for misconduct that are described by the so-called "cigarette rule." See *McLaughlin Ford, Inc.* v. *Ford Motor Co.*, 192 Conn. 558, 567–68, 473 A.2d 1185 (1984); *Conaway* v. *Prestia*, 191 Conn. 484, 492–93, 464 A.2d 847 (1983). As the attorney trial referee noted, under the "cigarette rule," a CUTPA claimant's evidence must establish that the conduct at issue falls within one of three criteria. A court must decide whether the conduct (1) offends public policy, (2) is immoral, unethical, oppressive or unscrupulous or (3) causes substantial injury to consumers, competitors or other businessmen. *McLaughlin Ford, Inc.* v. *Ford Motor Co.*, supra, 567–68.

In the circumstances of this case, the question is whether the plaintiff has proven that the defendant's conduct meets the unfairness test described in the sec-

---

[6] Although the defendant failed to list this issue in its preliminary statement of issues, as Practice Book § 63-4 (a) (1) requires, the plaintiff has not claimed that it was prejudiced by this procedural lapse.

ond criterion. The defendant maintains that, as a matter of fact and law, the plaintiff has failed to satisfy its burden of proof.

As a matter of fact, the defendant asserts that if, as in this case, a CUTPA claimant relies on only one criterion, it must establish the *degree* to which a defendant's conduct is unfair. See, e.g., *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, supra, 245 Conn. 43. The defendant argues that the report of the attorney trial referee is unacceptable because it does not contain any finding of degree. It properly raised this issue in its objection to the final report of the attorney trial referee.

We have found no precedent, and the defendant has cited none, that tells us how to determine the *degree* to which misconduct is unfair. In our view, the required calibration does not envisage a global standard but rather must reflect the particular circumstances of the case. Perhaps an unethical deviation from accepted trade practices that causes only minor injury, is not actionable. That is not this case. The report of the attorney trial referee establishes that the defendant deliberately refused to conform its conduct to an established trade practice in the construction industry. The defendant admitted that its actions were taken for the purpose of maximizing its profits. In our view, proof of such misconduct demonstrates unfairness to a substantial degree and permits a recovery under CUTPA. For today, it suffices to say that we are persuaded that, under these circumstances, the plaintiff has proven what it needed to prove.

As a matter of law, the defendant maintains that, in determining whether conduct is "immoral, unethical, oppressive or unscrupulous," this court is bound to follow the fairness test established by federal law. This argument is identical to the one the defendant raised

with respect to the question of whether CUTPA permits recovery for a single act of misconduct. Our answer is the same. The defendant cannot prevail on this claim. See *Caldor, Inc.* v. *Heslin*, supra, 215 Conn. 598.

The defendant's other claims warrant little discussion because they assume facts other than those in the report of the attorney trial referee or rely on principles of law that we already have found to be inapplicable. We note once again that, on the facts found, the plaintiff has not engaged in bid rigging. The breach of a duty to enter into a contract cannot properly be characterized as exhibiting conduct that is merely passive. Such a characterization does not flow from the cases cited by the defendant, in which there was *no* breach of duty.[7]

The defendant reiterates its claim that the plaintiff has not adequately demonstrated that it has suffered an ascertainable loss as a result of the defendant's misconduct. Recasting the defendant's contention to focus on the absence of proof of damages does not add to its persuasiveness. Further, the claim is premature in light of the contemplated future hearing to determine actual damages.

## CONCLUSION

We conclude, therefore, that the trial court improperly held that the defendant was entitled to judgment

---

[7] The defendant cites *Downes-Patterson Corp.* v. *First National Supermarkets, Inc.*, 64 Conn. App. 417, 780 A.2d 967, cert. granted, 258 Conn. 917, 782 A.2d 1242 (2001) (appeal dismissed June 25, 2002). In *Downes-Patterson Corp.*, we held that the defendant's refusal to execute a release of a restrictive covenant when the defendant had no obligation to do so did not constitute a CUTPA violation. Id., 426–28. The defendant also makes reference to three cases that we cited in support of that holding. See *Normand Josef Enterprises, Inc.* v. *Connecticut National Bank*, 230 Conn. 486, 523, 646 A.2d 1289 (1994); *Kenney* v. *Healey Ford-Lincoln-Mercury, Inc.*, 53 Conn. App. 327, 330, 730 A.2d 115 (1999); *Southington Savings Bank* v. *Rodgers*, 40 Conn. App. 23, 28–29, 668 A.2d 733 (1995), cert. denied, 236 Conn. 908, 670 A.2d 1307 (1996).

as a matter of law. Under these circumstances, we need not decide whether, if the court properly had decided to reject the report of the attorney trial referee, it had authority to render judgment in favor of the defendant rather than remanding the case for a new hearing before the same or a different attorney trial referee or before a judge of the Superior Court. See Practice Book § 19-17 (a).

In the absence of persuasive reasons for rejection of the report of the attorney trial referee, we further conclude that the court was required to render a judgment granting the motion of the plaintiff for acceptance of the report. Except for the hearing on damages, nothing further needs to be done.

The judgment of the trial court is reversed and the case is remanded with direction to accept the report of the attorney trial referee including its recommendation for a further hearing with respect to damages.

In this opinion the other judges concurred.