VINCENT P. LAROBINA *v.* HOME DEPOT, USA, INC.
(AC 21729)

Foti, Dranginis and West, Js.

Argued December 6, 2002—officially released May 13, 2003

*Vincent P. Larobina,* pro se, the appellant (plaintiff).

*Charles D. Ray,* with whom, on the brief was *Ingrid L. Moll,* for the appellee (defendant).

*Opinion*

DRANGINIS, J. This appeal arises from an action brought by the plaintiff, Vincent P. Larobina, against the defendant, Home Depot, USA, Inc., alleging breach of contract and violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-

110a et seq.[1] The plaintiff appeals from the judgment of the trial court accepting, in part, and rejecting, in part, the report of an attorney trial referee (referee). Specifically, the plaintiff claims that the court improperly (1) rejected the referee's recommendation that the plaintiff be awarded $1000 in punitive damages and (2) accepted the referee's recommendation that the plaintiff was not entitled to equitable relief in the form of an injunction or referral to the commissioner of the department of consumer protection.[2] We affirm, in part, and reverse, in part, the judgment of the trial court.

The underlying facts and procedural history are as follows. On January 25, 1999, the plaintiff, who was interested in purchasing carpeting, visited the defendant's store in Norwalk. During his visit, the plaintiff selected a particular type of carpeting. An employee of the defendant's store gave the plaintiff, what the plaintiff believed to be, a written quote for the cost of purchasing and installing the carpeting that he had

[1] The plaintiff also brought a claim for unjust enrichment. Because neither of the issues that the plaintiff has raised on appeal relate to that claim, we limit our discussion to the plaintiff's breach of contract and CUTPA claims.

[2] In its brief, the defendant maintains that we should affirm the judgment on the alternate ground that there was no violation of CUTPA and, therefore, no support for an award of punitive damages or equitable relief. We disagree. "It is well settled that in determining whether a practice violates CUTPA we have adopted the criteria set out in the cigarette rule by the federal trade commission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons]." (Internal quotation marks omitted.) *Murray* v. *Taylor*, 65 Conn. App. 300, 337, 782 A.2d 702, cert. denied, 258 Conn. 928, 783 A.2d 1029 (2001). On the basis of the referee's report and the documentary evidence attached to the plaintiff's objection to the report, we conclude that the court properly could have accepted the referee's finding that the defendant's conduct relative to the plaintiff constituted a deceptive trade practice in violation of CUTPA.

selected. The preprinted form containing the quote indicated that the "total charges of all merchandise & services" was $7.37. Thereafter, the plaintiff was directed to proceed to a cash register, where he presented the register employee with the written quote and a $100 deposit, which was to be credited toward the plaintiff's purchase of the carpeting. At that time, the plaintiff was given a second document entitled, "special services customer agreement." Subsequently, an agent of the defendant came and measured the premises where the plaintiff intended to have the carpeting installed, and determined that the plaintiff needed 47.34 square yards of carpeting.

On February 5, 1999, the plaintiff returned to the defendant's store to pay the balance of his order. At that time, he was given a revised quote, which reflected that the balance due was $474.53.[3] The plaintiff maintained that the balance due should have been $248.90, which he arrived at by multiplying the quoted price of $7.37 by 47.34 square yards, and then subtracting the $100 that he already had paid. When the plaintiff expressed his dissatisfaction with the revised quote to an employee of the defendant, the employee offered to cancel the plaintiff's order and to return his $100 deposit. The plaintiff declined that offer.

Thereafter, the plaintiff filed this action against the defendant in which he alleged claims for breach of contract and violation of CUTPA. In accordance with General Statutes § 52-434 (a) and Practice Book § 19-2A, the case was referred to the referee for trial. After considering all of the evidence adduced at trial, the referee issued a report setting forth his factual findings and legal conclusions. With respect to the breach of

[3] Apparently, the original quote of $7.37 represented the per unit cost of the carpet and carpet pad, but did not include the per unit cost of installation. The revised quote of $474.53 included the installation cost.

contract claim, the referee found that the plaintiff and the defendant had, in fact, entered into a binding contract in which the defendant agreed to sell the carpeting to the plaintiff for $7.37 per square yard, including installation, and that the defendant had breached that contract by later attempting to obtain a higher price from the plaintiff for the carpeting. With respect to the CUTPA claim, the referee found that the defendant's sales practices were misleading and unfair to consumers. The referee further found that the defendant recklessly used a convoluted and misleading structure of documents to reflect a relatively simple transaction.

On the basis of those findings, the referee concluded that the plaintiff was entitled to the return of his $100 deposit as compensatory damages. The referee further concluded that although $225.63, the difference between the original contract price of $348.90 and the subsequent charge of $574.53, was a reasonable measure of compensatory or actual damages, he would not allow the plaintiff that amount as damages because the defendant's subsequent offers to settle the case by performing the original contract entirely mitigated those damages.[4] Consequently, the referee concluded that the plaintiff was limited to the return of his $100 deposit as actual damages. The referee also concluded that because the defendant's conduct was reckless, the plaintiff was entitled to punitive damages of $1000 pursuant to CUTPA.[5] Finally, the referee concluded that it was unnecessary to award the plaintiff the equitable relief he sought as a remedy for the CUTPA violation in light of the award of punitive damages, which the referee determined to be sufficient to discourage the

[4] The defendant claimed that at some point after the plaintiff instituted his action, it offered to install the carpet for the price of $7.37 per square yard and that the plaintiff declined that offer. The plaintiff denied that the defendant made any such offer.

[5] The referee arrived at $1000 by multiplying the amount of actual damages, $100, by ten.

defendant from engaging in unfair practices in the future. Consequently, the referee recommended that judgment enter in favor of the plaintiff as to both the breach of contract and CUTPA claims, and that the plaintiff be awarded $100 in actual damages and $1000 in punitive damages for a total damages award of $1100.

Thereafter, pursuant to Practice Book § 19-14, the plaintiff and the defendant filed objections to the referee's report.[6] Thereafter, the court rendered judgment accepting the referee's findings and recommendations with two exceptions.[7] First, the court rejected the referee's recommendation that the plaintiff was limited to $100 in actual damages. The court, therefore, awarded the plaintiff the difference between the original contract price and the subsequent charge, $225.63, in addition to the refund of his $100 deposit, for a total actual damages award of $325.63 on the breach of contract claim. Second, the court rejected the referee's recommendation that the plaintiff was entitled to $1000 in punitive damages. The court concluded that the plaintiff was not entitled to any CUTPA damages because he

[6] In its objection to acceptance of the referee's report, the defendant claimed that (1) the combination of forms at issue did not constitute a binding contract, (2) the referee miscalculated the actual damages, (3) its conduct did not violate CUTPA and (4) the referee's award of punitive damages was not supported by the facts or the law. In his objection to acceptance of the report, the plaintiff claimed that (1) the record did not support a finding that any settlement offer was made by the defendant to the plaintiff and, therefore, the referee's conclusion that the plaintiff was not entitled to damages exceeding $100 because of his failure to mitigate damages was erroneous and (2) the referee improperly declined to recommend that the plaintiff was entitled to injunctive relief.

[7] We note that the parties did not provide the court with a complete transcript of the trial that was conducted before the referee, but only portions of that transcript. We agree, however, with the court's conclusions that it did not need a transcript because the parties were not arguing the facts but, instead, the legal conclusions contained in the recommendations of the referee and because the trial court had before it the same documentary evidence on which the referee relied. See *Meadows* v. *Higgins*, 249 Conn. 155, 170 n.10, 733 A.2d 172 (1999).

failed to prove that he suffered an ascertainable loss as a result of the CUTPA violation. Such proof is required by General Statutes § 42-110g (a).

The plaintiff thereafter filed a motion for articulation, requesting the court to articulate more specifically its judgment as to the CUTPA claim. Thereafter, the court issued a supplemental memorandum of decision in which it stated that although it accepted the referee's finding that the defendant had violated CUTPA, it did not accept the recommendation that punitive damages be awarded to the plaintiff for the reasons set forth in pages twelve through fourteen of its memorandum of decision.

I

The plaintiff first claims that the court improperly rejected the referee's recommendation that the plaintiff be awarded $1000 in punitive damages on the basis of the court's conclusion that although the defendant violated CUTPA, the plaintiff was not entitled to punitive damages as a matter of law because he failed to prove that he suffered an ascertainable loss of money as a result of the CUTPA violation. We agree.

Because the court's conclusion that the plaintiff was not entitled to CUTPA damages because he failed to meet the statutory prerequisites concerns a question of law, our review is plenary. See *Johnson Electric Co.* v. *Salce Contracting Associates, Inc.*, 72 Conn. App. 342, 348, 805 A.2d 735, cert. denied, 262 Conn. 922, 812 A.2d 864 (2002).

General Statutes § 42-110b (a) provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." General Statutes § 42-110g (a) provides in relevant part: "Any person who suffers any *ascertainable loss of money* or property . . . as a

result of the use or employment of a method, act or practice prohibited by section 42-110b, *may bring an action . . . to recover actual damages. . . .* The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper." (Emphasis added.)

"The ascertainable loss requirement is a threshold barrier which limits the class of persons who may bring a CUTPA action seeking either actual damages or equitable relief." *Hinchliffe* v. *American Motors Corp.*, 184 Conn. 607, 615, 440 A.2d 810 (1981).[8] Thus, to be entitled to *any* relief under CUTPA, a plaintiff must first prove that he has suffered an "ascertainable loss" due to a CUTPA violation. Id. "[T]he words 'any ascertainable loss' [however] . . . do not require a plaintiff to prove a specific amount of actual *damages* in order to make out a prima facie case." (Emphasis added; internal quotation marks omitted.) *Johnson Electric Co.* v. *Salce Contracting Associates, Inc.*, supra, 72 Conn. App. 354–55.

" '[L]oss' has a broader meaning than the term 'damage.' " (Internal quotation marks omitted.) *Beverly Hills Concepts, Inc.* v. *Schatz & Schatz, Ribicoff & Kotkin*, 247 Conn. 48, 79, 717 A.2d 724 (1998). For purposes of CUTPA, "[a]n ascertainable loss is a deprivation, detriment, [or] injury that is capable of being discovered, observed or established." (Internal quotation marks omitted.) *Service Road Corp.* v. *Quinn*, 241 Conn. 630, 638, 698 A.2d 258 (1997). "On its face, the loss of a contract is an ascertainable loss." *Johnson Electric Co.* v. *Salce Contracting Associates, Inc.*, supra, 72 Conn. App. 355.

---

[8] "One commentator has suggested that the only function served by a threshold 'loss' requirement in a consumer protection statute is to guard against vicarious suits by self-constituted attorneys general when they spot an apparently deceptive advertisement in the newspaper, on television or in a store window." (Internal quotation marks omitted.) *Hinchliffe* v. *American Motors Corp.*, supra, 184 Conn. 615 n.6.

With those principles in mind, we turn to the validity of the court's conclusion that the plaintiff was not entitled to CUTPA damages because he failed to prove that he suffered an ascertainable loss as a result of a CUTPA violation. In its memorandum of decision, the court set forth the following reasoning for its conclusion: "In *PAR Painting, Inc.* v. *Greenhorne & O'Mara, Inc.*, 61 Conn. App. 317, 318, 763 A.2d 1078, cert. denied, 255 Conn. 951, 770 A.2d 31 (2001), the court set aside a jury verdict finding a violation of CUTPA because there was insufficient evidence to sustain such a verdict. In the present case, there is insufficient evidence that the plaintiff suffered an 'ascertainable loss of money' as a result of a CUTPA violation. The plaintiff is being awarded compensatory damages as a result of the breach of contract based on the difference between the two quotes, so he is, in effect, reaping the benefit of his bargain. But the plaintiff rejected the return of his deposit and did not actually purchase any merchandise or property from the defendant which was 'different from that for which he bargained.' *Hinchliffe* v. *American Motors Corp.*, supra, 184 Conn. 615. The plaintiff decided that instead of getting his deposit back and walking away from the misunderstanding, he would initiate CUTPA litigation. Thus, the referee's recommendation that CUTPA damages be awarded is not accepted." We disagree with that reasoning for a number of reasons.

First, we conclude that the court's reliance on *PAR Painting, Inc.* v. *Greenhorne & O'Mara, Inc.*, supra, 61 Conn. App. 317, for the proposition that the plaintiff has failed to establish a causal relationship between his loss and the defendant's misconduct is misplaced. In *PAR Painting, Inc.*, the plaintiff alleged the same wrongful conduct as the basis for both its tortious interference and CUTPA claims. Id., 328. This court concluded that the trial court properly set aside the jury's

verdict and award of damages with respect to both claims because the evidence was insufficient to support the jury's finding that the defendants had engaged in any wrongful conduct, and because the plaintiff failed to prove a causal relationship between its losses and the defendants' actions. Id., 326–28.

Unlike the plaintiff in *PAR Painting, Inc.*, the plaintiff in the present case has established that the defendant did something improper. The referee found that the defendant had violated CUTPA by engaging in sales practices that were misleading and unfair to consumers. The court accepted that finding.

Furthermore, we conclude that unlike the plaintiff in *PAR Painting, Inc.*, the plaintiff in the present case also has established that it was the defendant's improper conduct that caused him to suffer loss. The plaintiff alleged the same conduct as the basis for both its breach of contract and CUTPA claims, namely, that the defendant had agreed, through the use of its standardized form documents, to sell and install carpeting for $7.37 per square yard, and that the defendant later attempted to exact a higher price from the plaintiff for that carpeting. As a result of the defendant's conduct, the plaintiff lost his bargain to have the carpet installed for a price of $7.37 per square yard. The referee found that this conduct constituted both a breach of contract and a violation of CUTPA.

The court accepted the referee's finding that the defendant's conduct gave rise to both a CUTPA violation and a breach of contract. Although the court concluded that the plaintiff was not entitled to CUTPA damages because he failed to prove that he suffered an ascertainable loss, the court did conclude that the plaintiff was entitled to recover damages to compensate him for the loss he suffered as a result of the defendant's breach of contract. The court even increased the

amount of damages the referee had awarded to the plaintiff to compensate him for that loss. We fail to see how the court could have concluded logically that the defendant's conduct was such that it caused the plaintiff to suffer the loss of his contract, thereby entitling him to contract damages, yet the same conduct, while sufficient to establish a CUTPA violation, failed to constitute an "ascertainable loss" for purposes of CUTPA. As we have stated, "[o]n its face, the loss of a contract [due to an unfair trade practice] is an ascertainable loss" for purposes of CUTPA. *Johnson Electric Co.* v. *Salce Contracting Associates, Inc.*, supra, 72 Conn. App. 355.

Moreover, we disagree with the court's implication that if there was a CUTPA loss, it was caused not by the conduct of the defendant, but rather by the conduct of the plaintiff, himself, because he simply could have taken back his $100 deposit and walked away from the transaction rather than initiate a CUTPA claim. Encouraging a claimant to walk away after a business has subjected him to an unfair or deceptive act is not the aim of CUTPA. On the contrary, CUTPA is "aimed at eliminating or discouraging unfair methods of competition and unfair or deceptive acts or practices." (Internal quotation marks omitted.) *Hinchliffe* v. *American Motors Corp.*, supra, 184 Conn. 616–17. To achieve that result, "CUTPA seeks to create a climate in which private litigants help to enforce the ban on unfair or deceptive trade practices or acts." Id., 618. Encouraging claimants to walk away from unfair or deceptive practices does not serve to help enforce the ban on unfair trade practices and prevents CUTPA from "achieving the remedial effect which the legislature desired." Id., 616.

Second, we disagree with the court's unsupported conclusion that because the plaintiff was awarded compensatory damages for the defendant's breach of contract, the plaintiff had, in effect, reaped the benefit of

his bargain and, therefore, could not have suffered an ascertainable loss of money as a result of the CUTPA violation. We find nothing in CUTPA, or case law, to support the court's conclusion that when a claimant recovers damages for his breach of contract claim, that compensation serves to eradicate any "ascertainable loss" that may have formed the basis for his recovery under CUTPA and restores him to the position he was in before the defendant engaged in such acts of misconduct.

· Finally, we note that the court's reliance on *Hinchliffe* v. *American Motors Corp.*, supra, 184 Conn. 607, for the proposition that the plaintiff did not suffer an ascertainable loss because he did not *purchase* any merchandise or property from the defendant that was "different from that for which he bargained"; id., 615; was misplaced. In *Hinchliffe*, our Supreme Court did not require that a claimant make a *purchase* to establish an ascertainable loss; it defined "ascertainable loss" in much broader terms. *Hinchliffe* provided that "[w]henever a consumer has received something other than what he bargained for, he has suffered a loss of money or property." Id., 614. Here, the plaintiff did receive something other than that for which he had bargained; he bargained to have carpeting installed at a price of $7.37 per square yard, but he got nothing.

Accordingly, we conclude that the court improperly concluded that the plaintiff was not entitled to punitive damages under CUTPA because he failed to establish that he suffered an ascertainable loss as the result of the defendant's CUTPA violation.

Because we conclude that the plaintiff satisfied the statutory criteria for relief under § 42-110g (a), the plaintiff was entitled to seek punitive damages. "In order [for the court] to award punitive . . . damages [under CUTPA], [the] evidence must reveal a reckless indiffer-

ence to the rights of others or an intentional and wanton violation of those rights." (Internal quotation marks omitted.) *Gargano* v. *Heyman*, 203 Conn. 616, 622, 525 A.2d 1343 (1987). "Awarding punitive damages . . . under CUTPA is discretionary . . . . " (Citation omitted.) Id. "[T]he trial court is not precluded from exercising this discretion even if it finds that the plaintiff has not suffered ascertainable damages." *Jacques All Trades Corp.* v. *Brown*, 42 Conn. App. 124, 131, 679 A.2d 27 (1996), aff'd, 240 Conn. 654, 692 A.2d 809 (1997). Thus, a court may award punitive damages under § 42-110g (a) for a violation of CUTPA even when the plaintiff has failed to show any actual damages flowing from that violation. Id., 130–31; *Tillquist* v. *Ford Motor Credit Co.*, 714 F. Sup. 607, 617 (D. Conn. 1989).

Here, the referee found that the defendant's conduct evinced a reckless indifference to the rights of the plaintiff by its use of a confusing and misleading combination of documents to reflect a relatively simple transaction. On the basis of that finding, the referee concluded that the plaintiff was entitled to punitive damages. The court did not conclude that the referee's finding that the defendant's conduct was reckless was clearly erroneous. It was, therefore, entirely within the court's discretion to award punitive damages to the plaintiff on the basis of the referee's finding.

II

The plaintiff next claims that the court improperly accepted the referee's finding that the plaintiff was not entitled to equitable relief. Specifically, the plaintiff claims that the court improperly accepted the referee's finding that he was not entitled to an injunction ordering the defendant to refrain from using the form documents at issue in this case or a referral to the commissioner of the department of consumer protection. We disagree.

Under CUTPA, the decision as to whether to award injunctive or other equitable relief, as with the decision to award punitive damages or attorney's fees, is entirely within the discretion of the trial court. See General Statutes § 42-110g (a) and (d). "[T]he exercise of such discretion will not ordinarily be interfered with on appeal unless the abuse is manifest or injustice appears to have been done." (Internal quotation marks omitted.) *Staehle* v. *Michael's Garage, Inc.*, 35 Conn. App. 455, 460, 646 A.2d 888 (1994).

On the basis of our review, we cannot conclude that the court abused its discretion in accepting the referee's recommendation that equitable relief was not warranted under the facts of this case.

The judgment is reversed only as to the denial of punitive damages and the case is remanded for further proceedings on the plaintiff's claim for punitive damages. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.