WILLIAM S. BAILEY *v*. VERNON L. LANOU, JR.
(AC 33632)

Gruendel, Sheldon and West, Js.

Argued March 12—officially released October 16, 2012

*Keith Yagaloff*, for the appellant (defendant).

*Matthew E. Willis*, for the appellee (plaintiff).

*Opinion*

GRUENDEL, J. This case is about a paved driveway. The defendant, Vernon L. Lanou, Jr.,[1] appeals from the

---

[1] The operative complaint named "Vernon L. Lanou, Jr. d/b/a V. Lanou and Co." as the sole defendant. "[T]he use of a fictitious or assumed business business name does not create a separate legal entity . . . [and] [t]he designation [doing business as] . . . is merely descriptive of the person or corporation who does business under some other name . . . . [I]t signifies that the individual is the owner and operator of the business whose trade name follows his, and makes him personally liable for the torts and contracts of the business . . . ." (Internal quotation marks omitted.) *Monti* v. *Wenkert*, 287 Conn. 101, 135, 947 A.2d 261 (2008).

judgment of the trial court in favor of the plaintiff, William S. Bailey. He claims that the court (1) made erroneous factual findings, (2) improperly admitted and credited the testimony of the plaintiff's expert, (3) rendered an erroneous award of damages, (4) improperly awarded the plaintiff damages pursuant to the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., and (5) erroneously awarded the plaintiff attorney's fees. We dismiss for lack of a final judgment that portion of the appeal contesting the award of attorney's fees and otherwise affirm the judgment of the trial court.

In its memorandum of decision, the court found the following relevant facts. The plaintiff owns real property known as 33 Knowles Road in Middle Haddam. The defendant is a paving contractor who employed his son, Keith Lanou, among other individuals. On August 20, 2008, Keith Lanou submitted a written proposal to the plaintiff on behalf of the defendant to construct a paved driveway and cart path on the property. That proposal stated that the defendant was a licensed home improvement contractor. On August 25, 2008, the parties entered into a written contract.[2] Its plain terms provided that the defendant would excavate the existing driveway and then install a six to eight inch base of reprocessed stone for the new driveway and cart path. After permitting that base to settle for a period of one month, the new driveway was to be paved with "class II bituminous" asphalt. The contract further provided that "[a]ll material is guaranteed to be as specified, and the above work to be performed . . . and completed in a substantial workmanlike manner for the sum of . . . $25,000 . . . ." When the parties modified the contract approximately two weeks later to encompass additional work, the contract price was increased to $31,300.

---

[2] The contract was admitted into evidence as the plaintiff's exhibit number five.

Like the written proposal, the contract represented that the defendant was a licensed home improvement contractor, listing "CT LIC. 545061" under the defendant's address. The court specifically found that "[t]he plaintiff relied upon the representation that the defendant was a licensed home improvement contractor. When the contract was executed and when the work was performed, the defendant was not a licensed home improvement contractor as required by law."

The court found that "[t]he excavation and placement of the driveway base materials was performed in September, 2008. The paving was done in October, 2008. The driveway is approximately 10,000 square feet in size. It took a number of truck loads of asphalt to pave this large area. The paving process involved the placement of hot asphalt into a paving machine. This machine then spreads out the material. The asphalt is then rolled. There are times when hand raking also is required. There were four men performing the paving work— [the defendant], Keith Lanou, and two other employees. The plaintiff was present while the paving was taking place. He observed that some of the asphalt contained much larger stones than specified in the class II [bituminous asphalt] mix. The plaintiff also observed that it contained other contaminates such as pieces of rubber material. The plaintiff requested that the defendant reject truck loads containing the larger stones and contaminates. The defendant refused this request. Most of the substandard asphalt was paved in . . . [an] area [that] is approximately 2500 square feet in size. The defendant's workers attempted to remove the large stones by picking them out of the pavement. This was unsuccessful because of the significant [number] of large stones. The large stones give the driveway a rough and coarse appearance.

"It is extremely important to roll the driveway when the asphalt material is at the optimum temperature. If

asphalt is rolled when it is either too hot or cold, it produces unacceptable results. This requires effective job planning which includes coordination of asphalt deliveries with the pace of the work being performed on the site by the paving machine and roller. A paving machine spreads asphalt in strips of pavement up to thirteen feet in width. It is then rolled and compacted by a roller. If the asphalt is rolled when it has cooled, it produces a cold seam between the adjoining strips of pavement. A cold seam is visible and is more likely to crack over time. Cold rolled pavement also produces what is referred to as 'orange peel flaking.' This is a condition in which you have rough areas with loose paving stones. If asphalt is rolled when it is too hot, it stretches the material and produces a rough and unacceptable surface. Asphalt which is rolled either too hot or cold does not result in proper compaction of the material.

"The plaintiff's driveway was paved over a period of two days. The work was slowed because at times the [defendant's] roller was not working properly and was unable to keep up with the pace of the work. Many areas of the driveway were cold rolled. This resulted in improper compaction, numerous cold seams, loose stones, and a rough and coarse appearance. The driveway was not installed in a workmanlike manner in accordance with standards in the paving industry."

The plaintiff paid the defendant $30,300 for the work performed. Although the parties thereafter had numerous discussions concerning corrective work on the driveway, no agreement was reached.

The plaintiff commenced the present action in March, 2010. His three count complaint alleged negligence, breach of contract and a CUTPA violation on the part of the defendant. In response, the defendant filed an

answer with ten special defenses, as well as a counter-claim alleging breach of an implied covenant of good faith and fair dealing, breach of contract and defamation on the part of the plaintiff. Following a two day bench trial, the court found in favor of the plaintiff on all of his claims, the defendant's special defenses and the defendant's counterclaim. On the issue of damages, the court found that the defendant had failed to fulfill his obligations to construct the driveway "in a substantial workmanlike manner" and with the material "guaranteed to be as specified . . . ." It further found that "[t]he credible evidence proves that the driveway can be satisfactorily repaired by removing defective pavement in the areas adjacent to the garage and barn, then repave the driveway. The cost to perform this work is $18,000. The plaintiff has proven his entitlement to damages in this amount." The court declined to award punitive damages but indicated that "[i]f the plaintiff seeks attorney's fees pursuant to [General Statutes] § 42-110g (d), his counsel shall submit an affidavit of attorney's fees along with contemporaneous records no later than June 1, 2011." The defendant subsequently filed a motion for reconsideration on May 31, 2011. The plaintiff filed an objection to that motion, which the court sustained, and this appeal followed.[3]

I

The defendant first assails numerous factual findings made by the court, which do not merit substantial discussion. We conclude that all of the challenged findings are supported by the record before us and address

[3] The defendant filed this appeal on July 5, 2011, at which time the court had not determined whether to grant the plaintiff's May 17, 2011 request for attorney's fees pursuant to § 42-110g (d). Nevertheless, our Supreme Court has held that "a judgment on the merits is final for purposes of appeal even though the recoverability or amount of attorney's fees for the litigation remains to be determined." *Paranteau* v. *DeVita*, 208 Conn. 515, 523, 544 A.2d 634 (1988).

specifically the defendant's claims that the court erroneously found that (1) the paved driveway contained material other than class II bituminous asphalt and (2) the paved driveway was improperly rolled.

It is axiomatic that "[t]his court will not reverse the factual findings of the trial court unless they are clearly erroneous." *Solomon* v. *Connecticut Medical Examining Board*, 85 Conn. App. 854, 865, 859 A.2d 932 (2004), cert. denied, 273 Conn. 906, 868 A.2d 748 (2005). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Internal quotation marks omitted.) *Gordon* v. *Tobias*, 262 Conn. 844, 849, 817 A.2d 683 (2003).

A

The defendant claims that the court erroneously found that the paved driveway contained material other than class II bituminous asphalt. To the contrary, the record contains ample evidence substantiating that finding. The deposition testimony of the plaintiff's expert, Michael Airoldi, was presented at trial. Airoldi testified that, on the basis of his firsthand inspection of the driveway and his examination of numerous photographs thereof, he observed large stones and rocks in the asphalt mix, as well as a piece of rubber. In particular, he opined that a portion of the driveway "was contaminated with stuff in it, bigger stones, rubber glob . . . ." He further testified that the large stones and debris that he observed in the paved driveway were not consistent with a typical class II bituminous asphalt mix. The plaintiff also introduced dozens of photographs—many of which contain a measuring tape for

reference—that depict in graphic detail the condition of the paved driveway, including multiple photographs featuring large stones. In addition, a handwritten letter from Keith Lanou to the plaintiff dated August 12, 2009, was admitted into evidence. In that letter, he acknowledged that a portion of the driveway contained "the occasional large stone in the mix and two pieces of rubber . . . ." The plaintiff also introduced into evidence a piece of rubber, approximately four inches by one inch in size, that was removed from the driveway constructed by the defendant. On that evidence, the court reasonably could have found that the paved driveway contained material other than class II bituminous asphalt.

## B

The defendant also claims that the court erroneously found that "substantial portions of the driveway were either cold rolled or rolled too hot. This has resulted in visible seams, rough surfaces and loose stone 'orange peel flaking.' In these areas, the pavement was not properly compacted." Those findings are supported by the testimony of Airoldi, who explained that a cold seam "is where you pick up with a paver and go back and start another pass with a paving machine, that would be a joint between the two areas. Some of the joints I [saw on the plaintiff's driveway] were rolled too late, meaning it was coarser, more texture, rough looking, which will flake, the stones will flake if it is not rolled in properly. A smoother area would be an area that's rolled in at the right time. And if it stretches and it's smooth, it was rolled when it was too hot. . . . [Y]ou don't want cold seams." Airoldi testified that he observed "at least five" cold seams during his inspection of the driveway that contained "loose stones, orange peeling, flaking." Airoldi opined that the foregoing was caused by not being "rolled in properly" and that the flaking in particular was a result of "not getting the right

compaction out of it . . . ." Asked why the plaintiff's "driveway looks the way it does," Airoldi answered that "[t]he cold seams and the orange peel flaking is [because it was] rolled too late. Some areas are rolled a little bit too late, some areas in the driveway are rolled a little bit too early due to the fact that I see stretching in the blacktop. When blacktop stretches, it's rolled too hot." The plaintiff introduced into evidence multiple photographs that displayed those conditions.

Moreover, in his August 12, 2009 letter to the plaintiff, Keith Lanou stated in relevant part: "The problem started when the wind came after we paved from the house garage into the large circle area. My roller started to run like crap misfiring and slowing down the rolling process which caused the worst of the problem areas. In order to keep going we had two torches going constantly to try to combat the wind and slow rolling. There is no way for you or I to turn back the clock or we would I can guarantee that. The only choice I had is to move forward, the material was already there and half of the largest span of pavement and largest seam is done. I need[ed] to continue so I can stop with a short seam to be able to heat and join the next day . . . ." That evidence further substantiates the court's factual finding that portions of the driveway were improperly rolled. The finding, therefore, was not clearly erroneous.

II

The defendant next claims that court improperly admitted and credited the expert testimony of Airoldi. "It is well established that [i]n a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . The credibility and the weight of expert testimony is judged by the same standard, and the trial court is privileged to adopt whatever testimony

[it] reasonably believes to be credible." (Internal quotation marks omitted.) *United Technologies Corp.* v. *East Windsor*, 262 Conn. 11, 26, 807 A.2d 955 (2002). "[T]he trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . Concerning expert testimony specifically, the trial court has wide discretion in ruling on the admissibility of expert testimony and, unless that discretion has been abused or the ruling involves a clear misconception of the law, the trial court's decision will not be disturbed. . . . Expert testimony should be admitted when: (1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court . . . in considering the issues." (Internal quotation marks omitted.) *Russo* v. *Phoenix Internal Medicine Associates, P.C.*, 109 Conn. App. 80, 87, 950 A.2d 559 (2008).

The plaintiff's November 30, 2010 expert disclosure indicated that Airoldi would base his expert opinions and conclusions upon his education, background, training and decades of experience in the field of asphalt paving. That disclosure further stated that Airoldi "will testify regarding defects in the material and workmanship in relation to the driveway which was installed by the defendant, the cause of the defects and damages." In his testimony offered at trial, Airoldi stated that he was a licensed home improvement contractor with twenty-five years of experience in the paving industry. He testified that he was "a master paving specialist." Although he performed both residential and commercial paving projects, he estimated that 75 percent of his business was residential. On that testimony, the court reasonably could have concluded that Airoldi possessed special skills and knowledge directly applicable to the present dispute.

Our thorough review of the one hundred and thirty-four pages of Airoldi's testimony, in which he provided detailed insight into the practice of paving a driveway, reveals that he possessed "knowledge, beyond the ken of the average [fact finder], that, as properly applied, would be helpful to the determination of an ultimate issue." *Siladi* v. *McNamara*, 164 Conn. 510, 513, 325 A.2d 277 (1973). In particular, Airoldi offered testimony as to proper installation of a paved driveway in accordance with the standards and practices in the paving industry by, inter alia, explaining the dangers of rolling pavement either too hot or too cold and the consequences thereof, which included orange peel flaking, loose stones, cold seams and a rough and coarse finish on the driveway. As sole arbiter of credibility and the weight to be given specific testimony, the court was "free to accept or reject, in whole or in part, the testimony offered by either party." (Internal quotation marks omitted.) *DiVito* v. *DiVito*, 77 Conn. App. 124, 138, 822 A.2d 294, cert. denied, 264 Conn. 921, 828 A.2d 617 (2003). We cannot say that the court abused its wide discretion in admitting and crediting Airoldi's testimony.[4]

### III

The defendant also contests the basis of the court's award of damages. In its memorandum of decision, the

[4] The defendant also alleges that no evidence or expert testimony was provided as to the applicable standard of care, rendering the plaintiff unable to meet his burden of proof. He is mistaken. As the court specifically found, the "standard of care was established through the express terms of the contract," which provides that the defendant's work was to be "completed in a substantial workmanlike manner" and that "[a]ll material is guaranteed to be as specified . . . ." In his expert testimony, Airoldi offered detailed testimony as to the proper installation of a paved driveway. Airoldi opined that, on his examination of "all of the problems" present as to the plaintiff's driveway, the defendant had not installed it in a workmanlike manner in accordance with the standards and practices in the paving industry. He further testified that the driveway contained materials other than class II bituminous asphalt, the material specified in the contract.

court found that "[t]he credible evidence proves that the driveway can be satisfactorily repaired by removing defective pavement in the [affected] areas . . . then repav[ing] the driveway. The cost to perform this work is $18,000. The plaintiff has proven his entitlement to damages in this amount." The defendant suggests that the court failed to consider less costly alternatives, such as seal coating. The record contains no indication that the court failed to do so. To the contrary, the court credited Airoldi's testimony on how best to repair the plaintiff's driveway. Airoldi testified as follows:

"[The Plaintiff's Counsel]: So, in your opinion, how would you repair this problem, these problems?

"[Airoldi]: Well, you could infrared it, seal coat it, but then that's just putting a Band-Aid on it because where the cold seam is, it's going to be more apt to crack than if it was, you know, a hot seam. Or saw cut out areas, for proper run off, take [those] areas out and overlay the whole thing.

"[The Plaintiff's Counsel]: What would be the preferred method to make this driveway what it's supposed to be?

"[Airoldi]: To cut out the areas and overlay it. Cut out the areas so you can get the proper water to run off in the right areas and take out whatever areas you need to take out and overlay the whole thing."

Airoldi further estimated that the cost of the preferred method to repair the plaintiff's driveway was $18,000. In light of that testimony, which the court was free to credit, the court's finding was not clearly erroneous.

IV

The defendant claims that the court improperly awarded the plaintiff damages under CUTPA because he failed to prove an ascertainable loss.[5] We disagree.

---

[5] The defendant also argues that the plaintiff failed to plead that he suffered an ascertainable loss as a result of the CUTPA violation. We reject that

"A party seeking to recover damages under CUTPA must meet two threshold requirements. First, he or she must establish that the conduct at issue constitutes an unfair or deceptive trade practice. . . . Second, he [or she] must present evidence providing the court with a basis for a reasonable estimate of the damages suffered. . . . The ascertainable loss requirement is a threshold barrier which limits the class of persons who may bring a CUTPA action seeking either actual damages or equitable relief. . . . Thus, to be entitled to any relief under CUTPA, a plaintiff must first prove that he [or she] has suffered an ascertainable loss due to a CUTPA violation. . . . An ascertainable loss is a loss that is capable of being discovered, observed or established. . . . The term loss necessarily encompasses a broader meaning than the term damage, and has been held synonymous with deprivation, detriment and injury. . . . To establish an ascertainable loss, a plaintiff is not required to prove actual damages of a specific dollar amount. . . . A loss is ascertainable if it is measurable even though the precise amount of the loss is not known." (Citations omitted; internal quotation marks omitted.) *Marinos* v. *Poirot*, 132 Conn. App. 693, 707–708, 33 A.3d 282 (2011), cert. granted on other grounds, 303 Conn. 940, 37 A.3d 154 (2012).

The court found, and the defendant does not dispute, that he was not a licensed home improvement contractor "[w]hen the contract was executed and the work was performed" on the plaintiff's property in violation

contention. His CUTPA count alleged that his acceptance of the defendant's written proposal was based in part on the defendant's representation that he was a licensed home improvement contractor. After specifying various manners in which the defendant failed to construct the driveway properly, the count alleged that the plaintiff "now must retain the services of another contractor to finish and/or remediate the services and materials previously rendered by the [d]efendant" and that "[a]s a result of the foregoing, the [d]efendant's negligence has caused monetary damages, delay and loss to the [p]laintiff."

of the Home Improvement Act (act), General Statutes § 20-418 et seq. The failure to comply with the act "is a per se violation of CUTPA by virtue of General Statutes § 20-427 . . . which provides that any violation of the [act] is deemed to be an unfair or deceptive trade practice." *A. Secondino & Son, Inc.* v. *LoRicco*, 215 Conn. 336, 343, 576 A.2d 464 (1990); see also *New England Custom Concrete, LLC* v. *Carbone*, 102 Conn. App. 652, 666, 927 A.2d 333 (2007). The only issue before us, therefore, is whether the court correctly concluded that the plaintiff proved that he suffered an ascertainable loss.

Once a violation of the act has been established, "the homeowners still must prove that they have suffered an injury or actual loss in order to recover damages under CUTPA." *Hees* v. *Burke Construction, Inc.*, 290 Conn. 1, 14, 961 A.2d 373 (2009). In the seminal case of *Hinchliffe* v. *American Motors Corp.*, 184 Conn. 607, 612–13, 440 A.2d 810 (1981), our Supreme Court held that a plaintiff is not required "to prove a specific amount of actual damages in order to make out a prima facie case" under CUTPA. The court explained that "[w]henever a consumer has received something other than what he bargained for, he has suffered a loss of money or property. That loss is ascertainable if it is measurable even though the precise amount of the loss is not known. . . . When the product fails to measure up, the consumer has been injured; he has suffered a loss." Id., 614. Accordingly, the court held that "[t]o satisfy the 'ascertainable loss' requirement, a plaintiff need prove only that he has purchased an item partially as a result of an unfair or deceptive practice or act and that the item is different from that for which he bargained." Id., 614–15.

In its memorandum of decision, the court specifically found that the plaintiff "relied upon the representation that the defendant was a licensed home improvement

contractor" in entering into the contract with the defendant. The court further found that, as a result of the defendant's failure to fulfill his contractual obligations to construct the driveway in a substantial workmanlike manner and to utilize the specified material, the plaintiff was damaged. Stated differently, the plaintiff purchased the new driveway in part as a result of the defendant's false representation that he was a licensed home improvement contractor, which driveway was different from that for which he bargained. On that basis, the court properly concluded that the plaintiff suffered an ascertainable loss. See *Hinchliffe* v. *American Motors Corp.*, supra, 184 Conn. 614–15. As this court has observed, "the loss of a contract is an ascertainable loss." *Johnson Electric Co.* v. *Salce Contracting Associates, Inc.*, 72 Conn. App. 342, 355, 805 A.2d 735, cert. denied, 262 Conn. 922, 812 A.2d 864 (2002).

We further are mindful that, like the complaint in *Larobina* v. *Home Depot, USA, Inc.*, 76 Conn. App. 586, 595, 821 A.2d 283 (2003), the plaintiff's complaint here alleged the same conduct as the basis for both its breach of contract and CUTPA claims. In rejecting the claim that the plaintiff had not demonstrated an ascertainable loss, the court in *Larobina* stated: "We fail to see how the court could have concluded logically that the defendant's conduct was such that it caused the plaintiff to suffer the loss of his contract, thereby entitling him to contract damages, yet the same conduct, while sufficient to establish a CUTPA violation, failed to constitute an 'ascertainable loss' for purposes of CUTPA." Id., 596. We concur with that assessment.

V

As a final matter, we briefly address the defendant's bald contention that the court erroneously awarded attorney's fees to the plaintiff. It is undisputed that, at the time that the defendant filed the present appeal, the court had not acted on the plaintiff's May 17, 2011

request for attorney's fees pursuant to § 42-110g (d). See footnote 3 of this opinion. With respect to the award of attorney's fees, we conclude that the defendant has not appealed from a final judgment.

Although neither of the parties raised a question as to the finality of the judgment, we do so sua sponte because it invokes this court's subject matter jurisdiction.[6] See, e.g., *State* v. *Carey*, 222 Conn. 299, 304–305, 610 A.2d 1147 (1992) (court may raise issue of subject matter jurisdiction sua sponte because it "involves the authority of a court to adjudicate the type of controversy presented by the action before it"). "The lack of a final judgment implicates the subject matter jurisdiction of an appellate court to hear an appeal. . . . The jurisdiction of the appellate courts is restricted to appeals from judgments that are final. General Statutes §§ 51-197a and 52-263 . . . ." (Internal quotation marks omitted.) *Liberty Mutual Ins. Co.* v. *Lone Star Industries, Inc.*, 290 Conn. 767, 793–94, 967 A.2d 1 (2009).

In *Paranteau* v. *DeVita*, 208 Conn. 515, 524 n.11, 544 A.2d 634 (1988), our Supreme Court stated that "[a] supplemental postjudgment award of attorney's fees becomes final and appealable . . . not when there is a finding of liability for such fees, but when the amount of fees are conclusively determined. A finding as to liability only, prior to a determination on the issue of damages, is not a final judgment from which an appeal lies." Relying on that precedent, this court has held that when "[i]t is undisputed . . . that the plaintiff filed her [appeal] before the amount of attorney's fees had been conclusively determined," the portion of the appeal pertaining to the award of attorney's fees "was not taken from a final judgment." *McKeon* v. *Lennon*, 131 Conn. App. 585, 611, 27 A.3d 436, cert. denied, 303 Conn. 901,

---

[6] Prior to oral argument before this court, we notified the parties that they should be prepared to address this final judgment issue.

31 A.3d 1178 (2011); see also *Sullivan* v. *Brown*, 116 Conn. App. 660, 662–63, 975 A.2d 1289, cert. denied, 294 Conn. 914, 983 A.2d 852 (2009). In light of the foregoing, we conclude that the defendant has not appealed from a final judgment with respect to the award of attorney's fees. We therefore dismiss that portion of the present appeal challenging, as clearly erroneous, the award of attorney's fees.

The appeal is dismissed for lack of a final judgment with respect to the issue of attorney's fees. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.