******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

PATRICK A. TREGLIA *v.* SANTA FUEL, INC.
(AC 34343)

Beach, Alvord and Bear, Js.

*Argued October 30, 2013—officially released February 4, 2014*

(Appeal from Superior Court, judicial district of
Fairfield, Levin, J.)

*Ridgely Whitmore Brown*, for the appellant
(plaintiff).

*Joel Z. Green*, with whom, on the brief, was *Linda Pesce Laske*, for the appellee (defendant).

*Opinion*

ALVORD, J. The plaintiff, Patrick A. Treglia, appeals from the judgment of the trial court rendered in favor of the defendant, Santa Fuel, Inc. On appeal, the plaintiff claims that "the trial court's factual findings [are] clearly erroneous in view of the evidence and pleadings in the whole record." He contends that these erroneous factual findings led the court improperly to render judgment in favor of the defendant. We affirm in part and reverse in part the judgment of the trial court.

The following relevant facts are not in dispute. In early November, 2007, the plaintiff contacted the defendant regarding possible delivery of home heating oil to his residence. The plaintiff also submitted a credit application. On November 2, 2007, the defendant approved the plaintiff's credit application and set up the plaintiff's account, orally agreeing to a "cap price plan"[1] of $2.789 per gallon. The defendant then mailed the plaintiff a written contract for automatic deliveries of oil at the agreed upon cap price of $2.789 per gallon. On November 5, 2007, the defendant delivered 619.9 gallons of oil to the plaintiff's residence. Some time later, the plaintiff received a copy of the contract from the defendant with the $2.789 per gallon cap price.[2] The contract stated it "must be signed and returned to [the defendant's] office on or before 11/06/07 to qualify for these offers." The plaintiff signed the contract and returned it to the defendant in an envelope that was postmarked November 20, 2007.[3]

Shortly thereafter, the plaintiff received another envelope from the defendant, postmarked November 23, 2007. Contained within was another 2007 through 2008 pricing options contract now listing a $2.979 cap price per gallon. Attached to the contract was a "sticky" note informing the plaintiff that "[the defendant] cannot accept the old price agreement—it was due back on 11/6/07. Please sign both sides of this agreement." (Emphasis omitted.)

Upon receipt of the new contract, the plaintiff contacted the defendant. The defendant informed the plaintiff that he could pay a rate of $2.789 for the oil delivered, but that future deliveries would be at the new rate of $2.979. The plaintiff signed the new contract and faxed it to the defendant on November 27, 2007. In December, 2007, the plaintiff received a past due notice from the defendant for $1847.28.[4] The plaintiff paid $1728.90[5] and included a letter, dated December 29, 2007, reminding the defendant that its employee "told [the plaintiff] that she would honor the quoted price" and that the defendant should "contact her to clear up this matter." The plaintiff also wrote that he has a total capacity of 660 gallons with a new high efficiency furnace, and he has "not use[d] one quarter of that thus far," therefore he "won't need a delivery

for some time" and that should be included in the defendant's future delivery calculations. On January 4, 2008, the defendant delivered 203 gallons of oil to the plaintiff, and on February 29, 2008, the defendant delivered another 195.6 gallons to the plaintiff, billing the plaintiff at a higher rate of $2.979 per gallon for both deliveries.[6] The plaintiff did not make payment for either of these deliveries.

The plaintiff commenced an action against the defendant in small claims court. On April 29, 2009, the defendant moved to transfer the action to the regular docket to assert a counterclaim, setoff, and special defense. In the plaintiff's revised, three count complaint, he alleged that the defendant (1) did not charge him the agreed upon price for the first delivery of oil, and therefore he "[c]laims as damages the difference between the price that [he] originally agreed to pay and the price that [the defendant] charged [him]"; (2) furnished the plaintiff with more home heating oil than he required; and (3) "damage[ed] [the plaintiff's] credit history" and violated "CUTPA [the Connecticut Unfair Trade Practices Act] for its unfair trade practices," and therefore he is entitled to collect attorney's fees. The defendant, in its answer, asserted two special defenses: (1) "there has been an accord and satisfaction with respect to the dispute between the parties regarding the per gallon price of home heating oil"; and (2) "[p]ursuant to the revised agreement between the parties, the plaintiff agreed to accept deliveries of home heating oil by automatic delivery from the defendant," and "[a]t no time did the plaintiff ever notify the defendant to stop delivering home heating oil to his home." By way of setoff and counterclaim, the defendant claimed (1) a balance due and owing on account of the oil sold and delivered to the plaintiff subsequent to November 27, 2007, and (2) that the plaintiff had been unjustly enriched to the detriment of the defendant. In its prayer for relief, the defendant claimed damages, attorney's fees, interest, and costs.

On December 8, 2011, the matter was tried to the court. In the court's order dated December 12, 2011, it found "for the defendant on the revised complaint and . . . for the defendant on the counterclaim . . . ." Thereafter, on January 23, 2011, the court issued a supplemental order awarding damages, interest, and reasonable attorney's fees to the defendant on the counterclaim "in the amount of $1448.81, principal balance; $1016.71 interest; and $478.11 attorney's fees, for a total judgment of $2943.63. Postjudgment interest shall accrue at 5 percent until further order from the court." On February 10, 2012, the plaintiff filed this appeal.

I

The plaintiff claims that the trial court's factual findings regarding the applicable contract and the agreed upon price are clearly erroneous in view of the evidence

and pleadings in the whole record. We disagree.

In reviewing the court's factual findings, we apply the clearly erroneous standard of review. *Petrucelli* v. *Travelers Property Casualty Ins. Co.*, 146 Conn. App. 631, 638, A.3d (2013). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Internal quotation marks omitted.) *Bailey* v. *Lanou*, 138 Conn. App. 661, 667, 54 A.3d 198 (2012).

A

Count one of the plaintiff's revised complaint sounds in breach of contract and alleges that the defendant did not charge the plaintiff the agreed upon price for the first delivery of oil. It is not disputed that the defendant agreed to accept payment at the lower rate of $2.789 per gallon for the first delivery of 619.9 gallons; the defendant states in its special defense that "[i]n November of 2007, the plaintiff and the defendant entered into an agreement pursuant to which the plaintiff agreed to pay and the defendant agreed to accept a reduced price of $2.789 for the home heating oil that had previously been delivered to the plaintiff with the express understanding that the plaintiff would pay to the defendant a price of $2.979 per gallon for future deliveries of home heating oil by the defendant to the plaintiff."[7] It also is not in dispute that the plaintiff paid the defendant $1728.90,[8] which was credited against his account. The evidence before the court, however, reveals that despite the plaintiff making payment for the first delivery in full at the lower rate, the defendant continued to bill the plaintiff for an outstanding principal balance of $118.38 on the first delivery.[9] Furthermore, an employee of the defendant admitted at trial that "all three deliveries were priced at [$] 2.979 [per gallon]." The pleadings and the record make clear that the parties agreed to the lower price of $2.789 per gallon for the first delivery of 619.9 gallons of heating oil, that the defendant did not charge the plaintiff this lower price, and that the defendant continuously attempted to recover more than the agreed upon lower price from the plaintiff.

Nonetheless, the fact that the defendant charged the plaintiff at rate higher than the contract rate does not render the court's finding that the plaintiff "must pay for the oil he purchased at the agreed [upon] price" clearly erroneous, nor does it impact the court's judgment in favor of the defendant on this count because the plaintiff is not entitled to damages. "The elements of a breach of contract action are the formation of an agreement, performance by one party, breach of the agreement by the other party and damages." (Internal

quotation marks omitted.) *Ibar* v. *Stratek Plastic Ltd.*, 145 Conn. App. 401, 410, 76 A.3d 202 (2013). "The general rule in breach of contract cases is that the award of damages is designed to place the injured party, so far as can be done by money, in the same position as that which he would have been in had the contract been performed." (Internal quotation marks omitted.) *RBC Nice Bearings, Inc.* v. *SKF USA, Inc.*, 146 Conn. App. 288, 312, 78 A.3d 195 (2013). The plaintiff claimed as damages the difference between the price that he agreed to pay and the amount charged by the defendant. It is not in dispute that the plaintiff paid the defendant $1728.90 for the first delivery of 619.9 gallons, and that this is the agreed upon price. It is also not in dispute that the plaintiff did not make any subsequent payments to the defendant. The plaintiff is therefore not entitled to damages on this count because he has not been injured; he never paid the defendants in excess of the contract rate of $2.789 per gallon, and he is in the same position as he would have been had the contract been performed. Accordingly, we affirm the judgment of the trial court as to count one of the plaintiff's revised complaint.

B

Count two of the plaintiff's revised complaint alleges that the defendant furnished the plaintiff with more home heating oil than he required. It is not in dispute that the plaintiff signed the contract at the higher rate, and that he was informed that all subsequent deliveries would be governed by that rate.[10] The terms of the contract make clear that the "[c]ustomer agrees that [the defendant] is the sole supplier of heating oil and agrees to accept deliveries by *automatic delivery* from [the defendant]."[11] (Emphasis added.) On the basis of the record, we conclude that it was not clearly erroneous for the trial court to find that the plaintiff "must pay for the oil he purchased at the agreed [upon] price" because "the plaintiff signed up for *automatic delivery* and, while he wrote the defendant on December 29, 2007, that 'I won't need a delivery for some time,' he did not specify what amount of time was 'some time,' never terminated his contract for *automatic delivery* and never told the defendant not to deliver fuel." (Emphasis added.) Accordingly, the findings related to count two of the plaintiff's revised complaint were not clearly erroneous.

C

Count three of the plaintiff's revised complaint alleges that the defendant violated CUTPA.[12] The plaintiff has provided no analysis or legal authority to support a challenge to the court's finding on this count. It is well established that "[w]e are not required to review claims that are inadequately briefed. . . . We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid aban-

doning an issue by failure to brief the issue properly. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. . . . [A]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court." (Internal quotation marks omitted.) *Russell* v. *Russell*, 91 Conn. App. 619, 634–35, 882 A.2d 98, cert. denied, 276 Conn. 924, 925, 888 A.2d 92 (2005). Accordingly, we decline to reach this claim.

## II

In its counterclaim, the defendant claimed "a balance due and owing" on account of the home heating oil sold and delivered to the plaintiff "[s]ubsequent to November 27, 2007," together with interest, attorney's fees, and costs. The defendant also claimed that the plaintiff had been unjustly enriched to the detriment of the defendant. The court awarded the defendant principal balance, interest, and attorney's fees. The plaintiff asserts that the amount awarded was clearly erroneous and "was not the subject of any computation or reconciliation." "The determination of damages involves a question of fact that will not be overturned unless it is clearly erroneous." (Internal quotation marks omitted.) *Ed Lally & Associates, Inc.* v. *DSBNC, LLC*, 145 Conn. App. 718, 733, 78 A.3d 148 (2013). Our review of the record reveals that the court's calculation of damages is clearly erroneous.[13] Accordingly, we reverse the court's judgment as to the counterclaim and remand the case for a new hearing regarding the proper amount of damages.

The judgment on the defendant's counterclaim is reversed and the case is remanded for a new hearing regarding the proper amount of damages thereon; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] According to the defendant's 2007 through 2008 pricing options, "[t]he '[c]ap' is the maximum price per gallon [a customer] will pay through May 31, 2008. If [the defendant's] [d]aily [p]osted [p]rice falls below [the] [c]ap on the day of delivery, [the customer] pay[s] the lower price per gallon. Requires automatic delivery."

[2] There is significant debate as to when the plaintiff received the contract in the mail. The postage meter date on the envelope is November 5, 2007. The plaintiff claims that he received the envelope several days later than that date, due to the incorrect zip code in the address.

[3] The defendant's mail stamp indicates that it received this contract on November 21, 2007.

[4] The defendant initially charged the plaintiff at a rate of $3.209 per gallon for the first delivery, which it claimed was the retail price of the day on November 5, 2007, for a total of $1989.88. We note, however, that the ticket that the defendant's delivery driver gave to the plaintiff upon delivery of the oil states "today's price" as $3.159, which an employee of the defendant testified at trial "was the retail price for customers that weren't on any plans as of that date." The defendant subsequently credited the $1989.88 total by $142.60, which is the source of the $1847.28 bill. Based upon this adjusted price, the defendant charged the plaintiff an adjusted rate of $2.9799 per gallon for the first delivery.

[5] This amount represents the original per gallon price of $2.789 for the

619.9 gallons delivered.

[6] The principal balance of the second delivery was $604.94, and it was $582.89 for the third delivery.

[7] "It is bedrock law that an admission in an answer to an allegation in a complaint is binding as a judicial admission. . . . A judicial admission dispenses with the production of evidence by the opposing party as to the fact admitted, and is conclusive upon the party making it." (Citations omitted, internal quotation marks omitted.) *Hartford* v. *McKeever*, 139 Conn. App. 277, 304, 55 A.3d 787 (2012), cert. granted on other grounds, 307 Conn. 956, 59 A.3d 1191 (2013).

[8] See footnote 5 of this opinion.

[9] The only credit by the defendant on the plaintiff's account for this first delivery is $142.60, which brought the amount listed by the defendant as remaining due to $1847.28. As we previously have established, based upon this adjusted price, the rate per gallon was $2.9799, which was higher than then $2.979 rate of the second contract.

[10] In his complaint, the plaintiff states that he "called and spoke to [the defendant's employee] and explained the situation, and she told me to pay the $2.789 for the oil that was delivered, but that I would have to pay the higher price for future deliveries. I signed the new contract and faxed it in on December 27, 2007." It is well settled that "[f]actual allegations contained in pleadings upon which the case is tried are considered judicial admissions and hence irrefutable as long as they remain in the case." (Internal quotation marks omitted.) *New London County Mutual Ins. Co.* v. *Bialobrodec*, 137 Conn. App. 474, 481, 48 A.3d 742 (2012).

[11] There is some debate over whether the plaintiff checked off any of the contract's price plan options: the original contract, which the plaintiff faxed to the defendant, did not have any of the options checked, but the fax receipt provided by the defendant shows a check mark by the cap price plan option. Nevertheless, all three price plan options required automatic deliveries.

[12] See General Statutes § 42-110a et seq.

[13] The court awarded damages to the defendant in the amount of $1448.81 for the principal balance, which was the amount that the defendant orally claimed at the January 23, 2011 hearing as being due and owing as of February 29, 2008. Although neither the court nor the defendant provided a basis for their calculation of this amount, the record reveals that it is the full amount of the first delivery of 619.9 gallons at the erroneous rate of $3.209 per gallon, plus the amounts of the second and third deliveries at the higher contract rate of $2.979 per gallon, minus the plaintiff's payment of $1728.90. The mathematics of this calculation is as follows: $1989.88 + $604.94 + $582.89 - $1728.90 = $1448.81. As we have previously established, the defendant applied a credit of $142.60 against the first delivery, and ultimately agreed to accept the lower rate of $2.789 per gallon for the first delivery of 619.9 gallons. Neither modification to the plaintiff's bill is correctly captured in the court's calculation of the principal balance. Accordingly, the calculation of the principal balance is clearly erroneous, as are the interest charges and attorney's fees that result therefrom.