******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JMS NEWBERRY, LLC *v.* KAMAN AEROSPACE
CORPORATION ET AL.
(AC 35695)

DiPentima, C. J., and Alvord and Harper, Js.

*Argued January 15—officially released April 22, 2014*

(Appeal from Superior Court, judicial district of
Hartford, Scholl, J.)

*Mary E. Mintel*, with whom was *Nicholas J. Harding*,
for the appellant (plaintiff).

*Michael J. Donnelly*, with whom were *Shawn G. Lisle*
and *Glenn M. Messemer*, for the appellees (named
defendant et al.)

*Opinion*

ALVORD, J. The plaintiff, JMS Newberry, LLC, appeals from the trial court's rendering of summary judgment in favor of the defendants Kaman Aerospace Corporation and Kaman Corporation.[1] On appeal, the plaintiff claims that the trial court erred in: (1) requiring the plaintiff to "provide detailed solutions to the environmental issues" caused by the defendants despite there being no such requirement when bringing a claim pursuant to General Statutes § 22a-16; (2) concluding that the plaintiff failed to demonstrate that the defendants' property "was altered so as to discharge" water onto the plaintiff's property "in a different course than its natural flow"; and (3) "finding that the defendants did not commit a trespass in failing to remedy a situation, when under a duty to do so, that resulted in a property invasion." We affirm the judgment of the trial court.

The record reveals the following undisputed facts. The defendants own approximately eighty-six acres of property in the town of Bloomfield. The defendants have occupied this property since the 1950s, and have owned it since 2008.[2] The plaintiff owns six parcels of land on the north side of East Newberry Road, across the street from the defendants' property located on the south side of East Newberry Road. The defendants' and plaintiff's properties do not abut, and East Newberry Road runs between them.

Since the 1950s, there has been a flat, grassy meadow, referred to as a "flight line," approximately 400 feet wide running adjacent to East Newberry Road on the defendants' property. Since 1980, neither the defendants nor their predecessor in interest, the United States government, have installed any impervious material onto the flight line or graded it to shed water. The plaintiff has been aware that water has been "coming down" from the defendants' property onto its property since at least 1986. Water from the defendants' property does not flow directly onto the plaintiff's property, but the water flows onto East Newberry Road. In late August, 2011, after tropical storm Irene, a tenant at the plaintiff's property noticed water runoff coming over East Newberry Road and causing erosion by flooding on the plaintiff's property.

On September 16, 2011, an attorney acting on behalf of the plaintiff contacted the defendants and "alerted [them] to the flooding problem." Thereafter, on November 28, 2011, the plaintiff commenced the present action against the defendants seeking damages and injunctive relief for the "erosion of the soil and banks" at the plaintiff's property. In its complaint, the plaintiff asserted that the "unnatural grading" of the defendants' property had resulted in "sheet flow water runoff" flowing from the defendants' property onto East Newberry

Road, where it then flowed onto the plaintiff's property and caused damage.[3] The plaintiff claimed that the defendants "failed to remedy" and "[continue] to maintain" this unnatural grading. The plaintiff alleged six counts against the defendants, including a cause of action pursuant to § 22a-16[4] and trespass.[5] The defendants filed an amended answer on July 26, 2012, denying the plaintiff's substantive allegations and asserting multiple special defenses.

On September 24, 2012, the defendants filed a motion for summary judgment on all claims asserted against them. The plaintiff filed a memorandum in opposition to the motion on October 26, 2012, and a motion for partial summary judgment as to liability only on November 9, 2012. The defendants filed a memorandum in further support of their motion for summary judgment on November 8, 2012, and a memorandum in opposition to the plaintiff's motion for partial summary judgment on November 30, 2012. Thereafter, the plaintiff filed a memorandum in further support of its motion for partial summary judgment on December 13, 2012. The court heard oral argument on the motions on December 17, 2012. In a written memorandum of decision released on April 3, 2013, the court granted the defendants' motion for summary judgment and denied the plaintiff's motion for partial summary judgment. The plaintiff subsequently filed a motion to reargue, which was denied on May 3, 2013. This appeal followed.

We begin by setting forth our standard of review. "Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . A material fact . . . [is] a fact which will make a difference in the result of the case. . . . [T]he scope of our review of the trial court's decision to grant the [moving party's] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Romprey* v. *Safeco Ins. Co. of America*, 310 Conn. 304, 312–13, 77 A.3d 726 (2013).

I

The plaintiff first claims that the trial court "erred in requiring [it] to submit solutions to the environmental issues caused by the [d]efendants, supported by specific evidence, when [the] [p]laintiff was not required to do

so" under § 22a-16. The plaintiff asserts that it simply should have been required to "show a protectable natural resource and that [the] [d]efendants, if not enjoined, would impair this resource." (Internal quotation marks omitted.) We are not persuaded.

"Section 22a-16 is a part of [the Connecticut Environmental Protection Act of 1971 (act), General Statutes § 22a-14 et seq.,] and was passed by the legislature to enable persons to seek redress in the court when someone is [polluting] our environment." (Internal quotation marks omitted.) *Shukis* v. *Board of Education*, 122 Conn. App. 555, 567, 1 A.3d 137 (2010). "General Statutes § 22a-17, which describes the burden of proof for claimants under § 22a-16, requires the plaintiff to prove causation, which is essential to such a claim, by establishing that the *conduct* of the defendant, acting alone, or in combination with others, has, or is reasonably likely unreasonably to pollute, impair or destroy the public trust in the air, water or other natural resources of the state . . . . To establish a prima facie case under [the act], the plaintiff must prove that the defendant's *conduct* was causing something more than a de minimis impairment of the environment." (Citation omitted; emphasis altered; footnote omitted; internal quotation marks omitted.) *Fort Trumbull Conservancy, LLC* v. *Alves*, 140 Conn. App. 155, 163–64, 57 A.3d 898, cert. denied, 308 Conn. 929, 64 A.3d 120 (2013). A review of the trial court opinion reveals that the court clearly gave two alternative bases for its holding that "[w]ithout an evidentiary basis [the plaintiff's] claim under [the act] fails." The trial court determined that the plaintiff "ha[d] not identified 'the alteration' it claims." The trial court additionally stated that the plaintiff had not identified "what 'repair' is necessary to fix it."

The plaintiff argued before the trial court that the defendants' "refusal to repair the alteration on [their] property that leads to the flooding of the [plaintiff's property] is an actionable offense" for purposes of the act because "[d]iverting surface water off one's property onto another's, thereby causing the erosion of that property owner's soil, constitutes impairment of a natural resource." Under the circumstances of this case, to prevail on its claim under the act, the *conduct* that the plaintiff was required to establish was that the defendants were maintaining an alteration to their property that diverted surface water. This conduct requires the existence of an alteration. Moreover, "[a] plaintiff cannot meet its burden [under the act] simply by demonstrating that a natural resource of the state has been, or likely will be, polluted . . . ." *Fort Trumbull Conservancy, LLC* v. *New London*, 135 Conn. App. 167, 182, 43 A.3d 679, cert. denied, 307 Conn. 905, 53 A.3d 220 (2012). Accordingly, while the plaintiff is correct that there is no requirement under the act that it must provide a detailed analysis of solutions prior to trial, we nonetheless affirm the court's judgment on the dis-

positive alternate ground that by failing to identify the claimed alteration,[6] the plaintiff has not met its burden of establishing that the *conduct* of the defendants unreasonably polluted and impaired the waters and natural resources of the state and the public trust therein.

## II

The plaintiff claims that the trial court "erred when it concluded that the plaintiff failed to demonstrate that the [defendants'] property was altered so as to discharge onto the [plaintiff's] property in a different course than its natural flow."[7] We do not find this argument to be persuasive.

The following procedural history is relevant to our resolution of this claim. In the count of its complaint seeking damages pursuant to the act, the plaintiff alleged that the defendants' "acts or omissions in allowing the increased flow of surface water onto [the plaintiff's] property, which has led to erosion and deposits of soil and sediment into a wetland area . . . has unreasonably polluted and impaired the waters and natural resources of the State of Connecticut and the public trust therein." The plaintiff argued before the trial court that under *Falco* v. *James Peter Associates, Inc.*, 165 Conn. 442, 335 A.2d 301 (1973), the defendants' refusal to repair the alteration that leads to the flooding of the plaintiff's property is an actionable offense for purposes of the act because "[d]iverting surface water off one's property onto another's, thereby causing erosion of that property owner's soil, constitutes impairment of a natural resource." The court, however, determined that the evidence submitted did "not provide a basis for such a claim" because the plaintiff "ha[d] not presented any evidence which would establish that [the defendants are], in fact, diverting surface water off [their] property," and, furthermore, the plaintiff "ha[d] not identified the alteration it claims." (Internal quotation marks omitted.) The court concluded that "[w]ithout an evidential basis [the plaintiff's] claim under the [act] fails."

In *Falco*, our Supreme Court reiterated the well established legal principle that "[a] landowner cannot use or improve his land so as to increase the volume of the surface waters which flow from it onto the land of others, nor can he discharge surface waters from his land onto the land of others in a different course from this natural flow, if by so doing he causes substantial damage." (Internal quotation marks omitted.) *Falco* v. *James Peter Associates, Inc.*, supra, 165 Conn. 445–46. The court went on to add that "[m]oreover, one who maintains such an alteration in his land, though it was created by his predecessor in title, may, after a request to remove it, be held liable for the continuing injury."[8] Id., 446.

Our review of the record in the present case supports the court's conclusion that the plaintiff failed to present

any evidence that would establish that the defendants were maintaining an alteration that diverted surface water off their property. The complaint attributed the alleged "increase flow of water" across the plaintiff's property to the "unnatural grading" of the defendants' property, which the plaintiff asserted that the defendants "failed to remedy" and "continue[d] to maintain." The evidence submitted by the defendants conclusively establishes that neither they nor the United States government, their predecessor in interest, have altered the defendants' property since at least the 1980s.[9] As our Supreme Court succinctly noted, a land owner "incurs no liability by reason of the fact that surface water falling or running onto his land flows thence to the property of others in its natural manner." (Internal quotation marks omitted.) *Ferri* v. *Pyramid Construction Co.*, 186 Conn. 682, 685, 443 A.2d 478 (1982).

Nevertheless, the plaintiff argues that it sufficiently established through the affidavits of its expert, Robert P. Pryor, that the defendants' property previously was altered from "a natural to a nonnatural state" by the defendants' or their predecessors in interest. "[I]t remains . . . incumbent upon the party opposing summary judgment to establish a factual predicate from which it can be determined, as a matter of law, that a genuine issue of material fact exists." (Internal quotation marks omitted.) *Macellaio* v. *Newington Police Dept.*, 145 Conn. App. 426, 434, 75 A.3d 78 (2013). "Mere assertions of fact . . . are insufficient to establish the existence of [an issue of] material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Internal quotation marks omitted.) *Nash* v. *Stevens*, 144 Conn. App. 1, 15, 71 A.3d 635, cert. denied, 310 Conn. 915, 76 A.3d 628 (2013). Pryor's affidavits establish, at best, that trees appear to have been removed from the defendants' property between 1934 and 1951.[10] Although Pryor avers that "[o]ther conditions being equal, mowed grass areas exhibit a higher runoff potential than natural meadows, which in turn exhibit a higher runoff potential than areas of forest and woodlands, [and] [t]herefore the [defendants'] property, as it was in 1928 or 1934, had a lower runoff potential than it does today," these historical observations fall well short of establishing material issues of fact concerning whether the defendants are maintaining an unnatural grade[11] on their property or diverting surface water off of their property. "Although an affidavit by an expert may be considered in opposition to a motion for summary judgment, conclusory affidavits, even from expert witnesses, do not provide a basis on which to deny such motions." (Internal quotation marks omitted.) *Luciani Realty Partners* v. *North Haven Academy, LLC*, 119 Conn. App. 522, 528, 988 A.2d 930 (2010). Except for the plaintiff's allegations, there is no evidence in the record that the defendants' property had been altered so as to discharge

water off of their property in a different course than its natural flow. Accordingly, the trial court was correct in determining that the plaintiff failed to submit any evidence that raised a question of material fact as to the defendants' potential liability under *Falco*.

### III

Finally, the plaintiff claims that "the trial court erred in finding that the defendants did not commit a trespass in failing to remedy a situation, when under a duty to do so, that resulted in a property invasion." We disagree.

"The essentials of an action for trespass are: (1) ownership or possessory interest in land by the plaintiff; (2) invasion, intrusion or entry by the defendant affecting the plaintiff's exclusive possessory interest; (3) done intentionally; and (4) causing direct injury." (Emphasis omitted; internal quotation marks omitted.) *Caciopoli* v. *Lebowitz*, 131 Conn. App. 306, 316, 26 A.3d 136 (2011), aff'd, 309 Conn. 62, 68 A.3d 1150 (2013). At argument before the trial court on the motions for summary judgment, the plaintiff argued that the defendants intentionally trespassed by failing to stop the intrusion of water onto its property. The court, however, concluded that "[a] review of the evidence presented indicates that [the defendants] ha[ve] taken no action [that] has caused an increase in the flow of water onto [the plaintiff's] property therefore [the plaintiff] cannot support a claim of trespass." Now on appeal, the plaintiff claims that the trial court failed to consider trespass law in the context of an omission to act. It claims that under *Falco* "it is the defendants' responsibility to keep water from intruding onto the land of others in a different course from [its] natural flow because [they] have chosen to maintain an alteration in [their] land created by a predecessor in title after a request to remove it." (Internal quotation marks omitted.) The plaintiff argues that "in failing to stop this intrusion the defendants have intentionally trespassed on to the [plaintiff's] property."

As we established in part II of this opinion, the plaintiff failed to raise a genuine issue of material fact that there was an alteration to the defendants' property that increased the volume of water flowing off of their property. Accordingly, the plaintiff's trespass claim does not fall under *Falco*, nor can it trigger liability.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The town of Bloomfield also was a defendant before the trial court. It was not a party to the motion for summary judgment at issue on appeal. Therefore, we refer in this opinion to Kaman Aerospace Corporation and Kaman Corporation as the defendants.

[2] The defendants purchased the property from the United States government. Prior to their purchase, the defendants operated as a government contractor on the site.

[3] The plaintiff also asserted that the runoff caused the soil on its property to be washed into the adjacent wetlands, filling the wetlands with sediment.

[4] General Statutes § 22a-16 provides in relevant part: "[A]ny person, partnership, corporation, association, organization or other legal entity may

maintain an action in the superior court . . . for declaratory and equitable relief against . . . any person, partnership, corporation, association, organization or other legal entity, acting alone, or in combination with others, for the protection of the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction . . . ."

[5] The plaintiff also alleged private nuisance, negligence, wrongful diversion of surface waters, and a cause of action pursuant to General Statutes § 22a-44 (b) against the defendants. The plaintiff has not challenged the trial court's granting of summary judgment with respect to these claims.

[6] We address in full the plaintiff's argument that it established that the defendants' property was altered so as to discharge water onto its property in part II of this opinion.

[7] In support of its argument, the plaintiff repeatedly cites to the court's discussion of *Falco* v. *James Peter Associates, Inc.*, 165 Conn. 442, 335 A.2d 301 (1973), in relation to the plaintiff's negligence and private nuisance claims. The trial court, however, granted the defendants' motion for summary judgment on both the negligence and private nuisance claims because it determined that those counts were barred by the statute of limitations. The plaintiff has not challenged the court's ruling with respect to the statute of limitations.

[8] At oral argument before this court, the parties disputed how we should interpret our Supreme Court's determination in *Falco* that the trial court's judgment as to damages should be reversed in part because "there [was] no finding that the defendants were given notice of the condition and thereafter refused to correct it." *Falco* v. *James Peter Associates, Inc.*, supra, 165 Conn. 446. The plaintiff asserted that under this holding it was simply required to give the defendants notice of the flooding, while the defendants argue that the plaintiff was required to give them notice of the alteration of the land causing the flooding. In their briefs, however, the parties failed to develop their arguments beyond a bare assertion of the claim. "[I]t is well settled that claims on appeal must be adequately briefed . . . and cannot be raised for the first time at oral argument before the reviewing court." (Internal quotation marks omitted.) *Driska* v. *Pierce*, 110 Conn. App. 727, 729–30 n.4, 955 A.2d 1235 (2008). Furthermore, "[a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Treglia* v. *Santa Fuel, Inc.*, 148 Conn. App. 39, 47, 83 A.3d 1222 (2014). Accordingly, we decline to reach this claim.

[9] The defendants submitted evidence to establish that they have not installed any impervious material on the flight line or graded it to shed water, and that the plaintiff has been aware that water has been coming onto his property since at least 1986.

[10] In his first affidavit, Pryor asserted that the defendants' property is uphill from the plaintiff's property, that "mowed grass areas exhibit a higher runoff potential than natural meadows, protected from mowing or grazing," and that "[t]here are many factors which can affect the runoff characteristics of grass surfaces." Later on, in further support of their motion for partial summary judgment, the plaintiff submitted another affidavit by Pryor, who attested that, based upon old aerial photographs and maps that depicted forests on the defendants' land in 1928 and 1934, but not in 1951, "it [was] [his] conclusion that the state of the [defendants'] property is not the same as it was in 1928 or 1934."

[11] In their reply brief, the plaintiff argues that "to grade" means "to level off a smooth horizontal or sloping surface," and that the defendants' property "was not naturally the smooth sloping surface it is today; it was a wooded area that was *unnaturally graded* into a field by the defendants' predecessor [in interest]." (Emphasis added.) Despite this assertion, the plaintiff has offered no evidence that the alleged removal of the trees was accompanied by or resulted in the leveling off of a smooth horizontal or sloping surface on the defendants' property. "While the court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion . . . a party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." (Internal quotation marks omitted.) *Recall Total Information Management, Inc.* v. *Federal Ins. Co.*, 147 Conn. App. 450, 456–57, 83 A.3d 664 (2014).